Plaintiff's Name L. H. "QIYAM" POGUE

Inmate No. F-65357

Address Pleasant Valley State Prison-C5-123L

POB 8503
Coalinga, CA 93210

FILED

FEB 27 2008

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

L. H. "QIYAM" POGUE

(Name of Plaintiff)

vs.

Dr. IGBINOSA Chief Medical Officer;

JAMES YATES, Warden; Dr. PHI;
Dr. DIEP; BRANDON PRICE; H. MARTINEZ;
AHLIN, Ass. Warden; D. HICKENBOTHOM;
MEDICAL PERSONNEL JOHN and JANE DOES 1-5
Dr. FHRMAN

(Names of all Defendants)

1:07-cv-1577-OWW-SMS-PC

(Case Number)

COMPLAINT
FIRST AMENDED COMPLAINT

Civil Rights Act, 42 U.S.C. § 1983

## I. Previous Lawsuits (list all other previous or pending lawsuits on back of this form):

A.  Have you brought any other lawsuits while a prisoner? Yes _X_ No ___

B.  If your answer to A is yes, how many? ___2___
    Describe previous or pending lawsuits in the space below.
    (If more than one, use back of paper to continue outlining all lawsuits.)

    1. Parties to this previous lawsuit:

    Plaintiff:  1) L. H. POGUE          2) L. "QIYAM" POGUE

    Defendants 1) San Diego County Jail;    2) California Dept. of Corrections

    2. Court (if Federal Court, give name of District; if State Court, give name of County)
    1) Southern District Court;  2) Eastern District Court, Sacramento (pending)

    3. Docket Number 1) Unknown;          4. Assigned Judge   Unknown

                     2) CIV S-05-1873 MCE GGH P                Gregory G. Hollows
    5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)
    1) Settlement;    2) Still Pending

    6. Filing date (approx.) 1) 1997; 2)2005   7. Disposition date (approx.) 1) 1999; 2) Pending

II. **Exhaustion of Administrative Remedies**

    A.    Is there an inmate appeal or administrative remedy process available at your institution?

    Yes <u>x</u>  No ___

    B.    Have you filed an appeal or grievance concerning **ALL** of the facts contained in this complaint?

    Yes <u>x</u>  No ___

    If your answer is no, explain why not _____

_____

_____

_____

    C.    Is the process completed?

    Yes <u>x</u>    If your answer is yes, briefly explain what happened at each level.

_____

_____

    No ___    If your answer is no, explain why not.

_____

_____

_____

**NOTICE:**    Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). If there is an inmate appeal or administrative remedy process available at your institution, you may not file an action under Section 1983, or any other federal law, until you have first completed (exhausted) the process available at your institution. You are required to complete (exhaust) the inmate appeal or administrative remedy process before filing suit, regardless of the relief offered by the process. Booth v. Churner, 532 U.S. 731, 741 (2001); McKinney v. Carey, 311 F.3d 1198, 1999 (9th Cir. 2002). **Even if you are seeking only money damages and the inmate appeal or administrative remedy process does not provide money, you must exhaust the process before filing suit.** Booth, 532 U.S. at 734.

III. **Defendants**

    (In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

    A.    Defendant <u>IGBINOSA</u>    is employed as <u>Chief Medical Officer</u>
              <u>CDCR</u>    at <u>Pleasant Valley State Prison, (PVSP) Coalinga, CA</u>

B.   Additional defendants ANES YATES, Warden at PVSP; PEREVEZ, Medical Doctor at PVSP; Dr. DIEP, Medical Doctor at PVSP; BRANDON PRICE, Medical Appeals Coordinator at PVSP; AHLIN, Associate Warden Coordinator for American with Disabilities at PVSP; H. MARTINEZ, Appeals Coordinator at PVSP; I. HICKENBOTHOM, Correctional Counselor at PVSP; Dr. EHRMAN, Medical Doctor at PVSP; ·

_____

_____

_____

_____

_____

## IV.   Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

Pursuant to Federal Rules of Civil Procedure Rule 8(a) plaintiff herein and in the attached Memorandum of Points and Authorities makes a "short and plain statement of the claims showing that he is entitled to relief. Plaintiff claims that he has been and continues to be deprived his civil and constitutional rights be the above named defendants. Since arriving at PVSP, plaintiff alerted PVSP medical staff (Dr. Castillo) that he had recently received back surgery and was experiencing serious pain and numbness. This happened around January 2006. It took defendants DIEP and IGBINOSA over 18 months to allow plaintiff to receive an MRI that disclosed he was now suffering from 3 protruding discs that prevented him from using his left leg. Due to the policy of defendants DIEP and IGBINOSA of not allowing plaintiff to seek the help from medical experts in the filed of back specialists such a policy caused plaintiff to suffer for over 18 months and to ultimately loose 3 discs that could have been saved and cause him to have his spine fused which prevents him form living a normal life without pain. (see attached page..)

## V. Relief.

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

Injunctive relief; Compensatory damages according to proof; Punitive damages according to proof; Cost of suit; and, such further relief as this Court deems proper and just.

$250,000 PLUS FUTURE MEDICAL CARE/EXPENSES Request for APPointment of MEDICAL EXPERT AND OR FUNDS for EXPERT; APPoint COUNSEL, 18 U.S.C. §3006 A

I declare under penalty of perjury that the foregoing is true and correct.

Date   2/24/08        Signature of Plaintiff Leon H. "Qiyam" Pogue

LEON H. "QIYAM" POGUE

(revised 6/01/04)

3

## IV. STATEMENT OF CLAIM (continued)

It is the experts opinion (Dr. KIM U.C. Davis Medical Center) that had plaintiff not waited so long to seek expert medical assistance he would not have had to suffer the loss of all 3 discs. This opinion was made after Dr. Kim reviewed the MRI from 2005 and the delayed MRI taken by defendants in 2007. Proof of this shall be produced in the form of exhibits when requested to do so by this Court. Therefore, due to the the policy of the defendants DIEP & IGBINOSA to delay treatment they must be held liable for the violations of plaintiff's Civil and Constitutional right to be free from pain and suffering; cruel and unusual punishment a violation of the Eighth Amendment; Unnecessary and wanton infliction of pain; knowingly, maliciously and sadistically inflicted physical abuse, thus, denying plaintiff as basic human need guaranteed to prisoners by the U.S. Constitution. These defendants were deliberately indifferent to plaintiff's well documented and known of serious medical condition. Thus, they both subjected plaintiff to the deprivation of his constitutional right, within the meaning of §1983 by their affirmative act, and direct participation of the acts and omissions to perform the act of adequate medical care which they both were legally required to do, and the failure to do so caused the deprivation which the complaint is based upon.

Defendants YATES, AHLIN, PRICE, MARTINEZ, and HICKENBOTHOM were all notified/contacted via inmate requests and/or 602 inmate appeals and informed of the medical problems plaintiff was experiencing before surgery in August 2007 as well as after. All of these defendants either failed to act, refused to act, or continued the underground policy at PVSP to deny relief from the deliberate indifferences, unnecessary wanton infliction of pain, cruel and unusual punishment. Each of these named defendants have been linked by either some affirmative act or omission that clearly demonstrates a violation of plaintiff's federal rights. For example, when plaintiff informed these specific defendants that he was suffering from a deliberate indifference of PVSP medical staff, all of these specific defendants passed the buck and informed plaintiff that there was nothing they could do and/or they refused to act to prevent the constant violations, allowing the underground policy of PVSP to continue to make plaintiff suffer in excessive pain. In addition, when plaintiff complained in writ writing to these specific defendants as well as JOHN and JANE DOES 1-5 MEDICAL PERSONNEL, none of these defendants would investigate plaintiff's claims of deliberate indifference. It was not until almost 18 months later of suffering when plaintiff could no longer walk due to his left side being paralyzed that defendants finally allowed him to receive a MRI that disclosed the fact that he had 3 discs (L3,4, & 5) that were all protruding pressing on the nerves that controlled the lower left part of his body. Plaintiff should not have had to suffer for 18 months before being taken seriously. Thus, these specific defendants are all linked by their affirmative acts or omissions that demonstrates violations of plaintiff's federal rights giving rise to cognizable laims for relief under §1983.

Defendant Dr. EHRMAN is the current treating physician who has discontinued plaintiff plaintiff's pain medication without ever examining or seeing plaintiff causing plaintiff to suffer in severe pain creating a deliberate indifference to plaintiff's serious medical needs. All of the above defendants have violated and/or continue to violate plaintiffs federally protected rights and they have all acted in their official and individual capacities acting under color of law.

3(A)

Leon H. "QIYAM" Pogue, E65357
Pleasant Valley State Prison, C5-123L
POB 8503
Coalinga, CA 93210
(Plaintiff in pro-Per)
(Plaintiff in Pro-Per)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| LEON H. "QIYAM" POGUE,<br><br>        Plaintiff,<br><br><br>     v.<br><br>DR. IGBINOSA, Chief Medical Officer;<br>JAMES YATES, Warden;<br>Doctors PHI, DIEP, and EHRMAN;<br>Associate Warden AHLIN;<br>Appeals Coordinator H. MARTINEZ;<br>Medical Appeals Coordinator BRANDON PRICE;<br>Correctional Counselor HICKENBOTHOM;<br>JOHN and JANE DOES 1 through 5 Unknown<br>Medical and Custody Personnel, et al.,<br><br>        Defendants. | 1:07-cv-1577-OWW-SMS-PC<br><br>**FIRST AMENDED COMPLAINT;<br>MEMORANDUM OF POINTS<br>and AUTHORITIES;<br>DECLARATION IN SUPPORT<br>THEREOF**<br><br><br>February 24, 2008<br><br>Honorable Magistrate<br>Judge: Sandra M. Snyder |

## CORRECTIONS OF MIS-STATEMENT OF FACTS IN THE COURT'S JANUARY 24, 2008 ORDER

Plaintiff first and foremost is compelled to correct certain statement of facts this Court cited to in it's January 24, 2008 Order at page 2 of the Order DISMISSING COMPLAINT WITH LEAVE TO AMEND.

1

On page 2 at lines 24, 25, this Court incorrectly stated that:
"...where the events at issue in this action allegedly occurred." For
the record, these violations initally occurred at San Quentin in 2000
when plaintiff initially sustained the injury that ultimately was allowed
to progressively worsen over a seven year period of time. Thus, that
is why plaintiff initially filed the complaint in the Northern District
Court where the violations initially occurred at.

At page 8 section E. MEDICAL CARE CLAIM, line 9 the Court
incorrectly IDENTIFIED the plaintiff as the "Defendant" by stating: "Def-
endant alleges that when he arrived at PVSP in January 2006..." Again
at line 14 the Court incorrectly identified the surgery as being performed
at: "PVSP in 2007..." The correct location of the surgery was performed
at U.C. Davis Medical Center, Davis, California.

Again at line 18, the Court incorrectly inserted: "PVSP" as the
location of surgery when the correct location was "U.C. Davis Medica Center
in Davis California. Plaintiff would request of the Court to recognize
these changes to the record as being true.

HISTORY OF MEDICAL VIOLATIONS

In 1999, plaintiff was housed at R. J. Donovan, in San Diego County
where he had received orthoscopic surgery to evaluate an ACL tear in his
left knee. Due to a slow recovery, plaintiff required a custom made Don
Joy knee brace and the use of a cane to get around.

Around January 2000, he was transferred to San Quentin State Prison
in Marin County while still requiring the use of the Don Joy custom knee
brace as well as the can, and he had a pronounced limp. While at San
Quentin (herein after S.Q.) he was assigned to a full time work assignment

although his medical condition required him to be assigned to a "light duty" work assignment according to the initial reviewing doctor at S.Q. He was assigned to a work assignment that required him to move around 30 industrial size metal dumpsters around so the trash left behind them could be swept up and the area washed down.  This was a policy of the then warden Jeanne Woodford.  Although plaintiff had complained to his initial classification committee at S.Q. that due to his medical condition he should not be placed in a full work duty assignment, those prison officials refused to adhere to their own doctor's medical chrono which specified that plaintiff should be placed in a "light duty" work assignment due to his physical limitations.  He also complained to his custody staff supervisor (Correctional Officer Whitehorse) that due to plaintiff needing the use of a cane, it was difficult for him to physically perform this work assignment.  Plaintiff's complaints fell upon deaf ears and he was threatened with either doing the work assignment or suffering progressive disciplinary actions including but not limited to the loss of custody credits, loss of privileges, and ultimately being placed on "C" status as a program failure.  To avoid the disciplinary actions, plaintiff complied with the orders to do the difficult job assignment, the whole while filing inmate appeals to be assigned to a "light duty" work assignment.

In 2000, before exhaustion of the appeal process, plaintiff sustained the first of three injuries to his back/spine.  While performing his duties at S.Q. in which he was pushing/pulling the industrial size metal dumpsters, he felt a "pop" in his lower back and experiences a "burning sensation".  Supervisor Whitehorse was immediately told of the

3                          1:07-cv-1577-OWW-SMS-PC

injury and in return he wrote plaintiff a pass to medical for x-rays. The results were negative, however, the next day plaintiff could not walk. Plaintiff was again examined by the initial female Asian doctor (name is unknown at this time, but it is documented in S.Q. medical files), this doctor immediately ordered plaintiff to be removed from the job assignment, stating that he should have never been assigned to such an assignment in the first place since she had initially wrote a medical chrono limiting his physical; abilities. It was only after suffering this first injury that S.Q. prison officials reassigned plaintiff to a "light duty" assignment as a trash recycle where he was allowed to sit down for the 2 hours it took to do his job.

Around 2001, S.Q. medical staff sent plaintiff out for his first MRI. The results showed that he had sustained a slipped-protruding L5 disc. Around 2002, before any treatment could begin to address the injury at S.Q., plaintiff was transferred to CSP-Solano, however, for the 5 months prior to the transfer plaintiff was held in S.Q. ad-seg without receiving any pain meds or treatment for the injury he sustained.

Upon his arrival at CSP-Solano, plaintiff was housed in ad-seg for two weeks in which he did not receive any treatment or pain meds for his back injury. He had immediately notified medical staff in writing of the injury. The first doctor of treatment ordered a second MRI since over 5 months has elapsed since the first MRI was taken. Upon reviewing the results of the second MRI, it was determined that plaintiff woul;d would be given pain management consisting of pain meds. For unknown reasons the first treating physician was no longer assigned to plaintiff's case, and a second doctor was assigned to the case after the current pain meds expired about 30 days later, however, it took another 30 days to re-start

4                                          1:07-cv-1577-OWW-SMS-PC

treatment on plaintiff's case leaving him to suffer without any pain meds or treatment. The second assigned doctor to plaintiff's case began the entire process all over again by ordering a third MRI. Once again, after reviewing the results of the third MRI, the treating physician decided to place plaintiff on yet stronger medication to help relieve the severe pain which was caused by a deteriorating condition and this time the pain management consisted of pain meds including but not limited to methodone, and epidural injections administered by Dr. JABER from California Medical Facility (CMF) in Vacaville California.  Plaintiff's condition continued to worsen to a point that after receiving the allotted amount of nine injections in series of three one every two weeks, after approximately 18 months of this pain management his condition worsened so much that he had to walk hunched over all the while dragging his left leg, and still using a cane and Don Joy leg brace to try and get around.  After the methodone and ultimately the oxy cotin had failed medical staff at CSP-Solano determined that plaintiff had to be seen by a back sepcialist.

Around 2004 plaintiff was sent to see Dr. NELSON in Modesto from Doctors Hospital.  After physically examining plaintiff, Dr. Nelson ordered a mylogram to see what the exact cause of plaintiff's medical issue was. This was done after medical staff at CSP-Solano had ordered a third and fourth MRI on plaintiff's lower back which comprised of an 18 month period. Those test results showed a worsening condition since the initial injury was sustained at San Quentin in 2000.  The results now showed that the L4, and L5 discs were both protruding.  Around January 2005, a mylogram was finally conducted at Doctors Hospital in Modesto.  In February 2005, plaintiff was again transferred away from his treating physican and he was left to suffer for another five months without adequate pain management

5

due to his status of being placed in ad-seg for no actions of his own.

Upon his arrival around February 2005 at Sierra Conservation Center (SCC) Jamestown, a Doctor Witmeyer (sic) discontinued plaintiff's oxy cotin pain meds without ever seeing plaintiff and placing him on a non-effective Tylenol 3 asprin which did nothing to relieve the severe pain he was having. Plaintiff informed this Dr. and other medical staff at SCC that he was under the care of Dr. Nelson in Modesto, and that SCC prison officials and medical staff needed to contact Dr. Nelson's office for an immediate follow up for the test results of the January 2005 mylogram test. This request was made verbally and in the form 602 inmate appeals around March 2005. It was not until around July 2005, some four to five months after arriving at SCC that those prison officials allowed plaintiff to be seen by Dr. Nelson, all the while allowing plaintiff to suffer in sever pain, walking hunched over, dragging his left leg, still needing the use of a cane and the Don Joy knee brace.

It was disclosed to the plaintiff that his L5 disc would have to be surgically operated on by Dr. Nelson. In August 2005, plaintiff received surgery at Doctors Hospital in Modesto, and after that surgery, Dr. Nelson informed plaintiff that once he got inside he had to operate on the L4 as well as the L4 discs due to the deteriorated condition of the discs since the mylogram was taken in January 2005. He informed plaintiff that since there was a long delay in between the time of the mylogram and the surgery in August, plaintiff's condition had worsened by allowing plaintiff to walk around in the condition he was in. This additional deteriorated condition was a direct result of prison officials at SCC failures to get plaintiff adequate medical attention.

-

In January 2006, plaintiff was again transferred. This time he was transferred to PVSp due to prison officials at SCC claiming that they could not meet the medical needs of plaintiff's medical condition and that he would be trsansferred to a "Medical Facility/Prison." On January 6, 2006, plaintiff arrived at PVSP and was immediately made to lay in R&R from 10 a.m. until 7 p.m. without any pain medication, and then he was moved to the "C" facility sick call cage and made to lay on floor from 7 p.m. until 10 a.m. the following Saturday morning, all the while without receiving any pain meds. Plaintiff informed both medical and custody staff that he had received back surgery in August 2005, and he was experiencing difficulty in walking, experiencing severe pain and numbness in his left leg. Plaintiff was eventually seen approximately 6 weeks after arriving to PVSP by a Dr,. Castillo, who after hearing plaintiff's complaints ordered yet another MRI. This time the MRI was not performed for another 18 months, all the while allowing plaintiff's condition to worsen. Plaintiff had been seen by Dr. DIEP and Dr. PHI, as well as other unknown doctors, who all contributed to the unnecessary wanton and infliction of pain, deliberate indifference to plaintiff's serious medical condition.

Sometime around July 2007, close to some 7 years after the initial injury sustained at San Quentin, plaintiff was seen by a Dr. KIM from U.C. Davis Medical Center in Davis California. It was Dr. Kim who informed plaintiff the true nature of his condition and that the condition had been allowed to get so bad over the years from lack of adequate treatment that he had to remove the L3, L4, and L5 discs, fuse the spine, place 2 metal rods and 4 metal screws along with a metal cage in the spine to grant plaintiff relief from the severe pain and suffering. Dr. Kim informed plaintiff had he received adequate care initially over the past 7 years,

7

plaintiff would not have to loose the discs and have his mobility impaired
by the metal hardware being placed in his spine.

Plaintiff complains and the records in this case shall show that
due to defendants deliberate indifference to his well established medical
condition, he was made to suffer for over 7 years, in severe pain for the
18 months prior to the recent surgery, and it is these defendants that
have caused plaintiff to now be in a condition that requires him to forever
have his daily life to be altered beyond repair.  To add insult to injury,
plaintiff has always required the need to have the custom made Don Joy
knee brace on to assist in his limping around as well as the use of a cane.
Plaintiff was diagnosed by a MRI that he suffered from a MCL tear in the
left knee, which was a direct result of him being forced to drag his left
leg around.  PVSP received the medical data that showed the need for surgery
and the defendants listed herein failed to get plaintiff to see Dr. Smith
who initially conducted the original ACL left knee repair in 1999.  This
MRI was performed in or around February 2007, and as of today's date, plain-
tiff is still waiting for medical treatment on his MCL left knee tear.
To make matters worse, plaintiff has been retaliated against by unknown
custody staff by them confiscating his $350 custom Don Joy knee brace during
a cell search in January 2008, which has now made it impossible for
plaintiff to even attempt to walk, reducing him t the use of a wheel chair.

Lastly, defendants have refused and failed to follow the orders
of the surgeon in which he requested that since PVSP was not equipped to
give plaintiff the physical therapy he required, it was best for plaintiff
to be transferred to a true medical facility that could assist in a proper
rehab.  Defendants have failed to provide any form of physical therapy
claiming that plaintiff would be seen by a physical therapist, which has

8                    1:07-cv-1577-OWO-SMS-PC

not resulted since surgery in August 2007 to now.  When plaintiff complained
of the failures of defendants, he was met with a discontinuation in pain
meds, refusal to see medical staff, defendant Dr. EHRMAN has discontinued
plaintiff's mid-day pain meds without ever examining plaintiff or seeing
him; defendants Dr. Diep and PHI refused plaintiff a medical transfer
stating that it was defendant IGBINOSA's policy to only transfer inmates
who has aids, cancer, required oxygen, or were terminally ill; that plain-
tiff informed defendant Dr. IGBINOSA that due to his subordinates not
caring for plaintiff's serious medical condition coupled with the fact
the the surgeon Dr. Kim had faxed IGBINOSA a request to transfer plaintiff
to a medical facility, that to allow plaintiff to continue to suffer was
a deliberate indifference to his serious medical needs and that cruel &
unusual punishment was being administered to plaintiff; that when plaintiff
informed defendant JAMES YATES, the Warden of PVSP, he refused to correct
the wrongs of his staff and allowed his personnel to continue to violate
plaintiff's civil and constitutional rights, the appeals went unaddressed;
that when plaintiff sought the help from his Correctional Counselor defen-
dant HICKENBOTHOM (sic?), HICKENBOTHOM told plaintiff there was nothing
that he could to do assist plaintiff in getting a medical transfer that
it had to come from defendant IGBINOSA and that was the policy that he
was req required to follow and that was the policy he had to abide by;
that when plaintiff sought help from defendants PRICE Medical Appeals Coor-
dinator and Appeals Coordinator MARTINEZ, they both informed plaintiff
that they had to follow the policy in place by defendants IGBINOSA and
YATES; that when plaintiff sought help to get adequate medical care from
JOHN and JANE DOES 1 through 5 they too informed plaintiff that they were
bound to follow the policy of defendants IGBINOSA and YATES and they could
not grant plaintiff any relief, pain meds, or medical transfer.

Thus, as of today's date ⸴  plaintiff is still waiting to see ortho surgeon Dr. Smith for the MCL tear in the left knee; that plaintiff is reduced to be in a wheel chair due to the failures of defendants to get him adequate medical care and/or physical therapy; that on any given day the defendants will discontinue his pain meds without ever pyhsically examining him or seeing him; that he is left to suffer in pain for no justifiable penological reason; and that plaintiff has amply stated claims for relief  under §1983 by specifically linking each named defendant with either some affirmative acts or omissions that amply demonstrates violations of plaintiff's federal rights. Plaintiff has alleged specific facts giving rise to cognizable claims for relief against the named defendants under §1983.  He has also amply alleged cruel and unusual punishment and the mistreatment had and continues to rise to the levels of deliberate indifference to his serious medical needs. It is clear by the allegations that the deprivations being suffered by the plaintiff are sufficiently serious and that the defendants acted and continue to act with a sufficiently culpable state of mind which involves more than mere negligence and that all of the defendants were made aware known of the serious harms being suffered by the plaintiff and they all disregarded the excessive risk to his health and ultimate safety. Therefore, plaintiff has amply alleged that the defendants named herein clearly and unjustifiably delayed impeded or refused to provide medical care which resulted in the deliberate indifference, and thus, plaintiff has shown this Court how those delay have resulted in a harmful manner.

10

Lastly on this issue, plaintiff specifically alleges that as recent
as 2/14/08, defendant EHRMAN diagnosed plaintiff with a hernia.  This is
a direct result from plaintiff not being given any form of physical
therapy and a result of the defendants confiscating his custom made leg
brace.  These actions by the defendants have resulted in plaintiff's health
worsening and ultimately deteriorating month by month for failure to get
him any form of therapy of exercise.  These actions by the defendants can
no longer be tolerated, especially in light of plaintiff's health being
placed in serious jeopardy.

## PRISON POLICIES

Plaintiff contends that a claim can arise against the defendants
for relief pursuant to §1983 based upon his theory of supervisory liability
for defendants IGBINOSA and YATES promulgating or "implementing such a
policy that is so deficient that the policy 'itself is a repudiation of
constitutional rights' and is 'the moving force of the constitutional
violation.'" (**Hansen v. Black**, (9th Cir. 1989) 885 F.2d 642, 646; **Taylor
v. List**, (9th Cir. 1989) 880 F.2d 1040, 1045).  As described below, the
first and most important policy implemented by defendant YATES and followed
by defendant HICINBOTHOM is the failure to allow a level 3 to a level 3
transfer.

Secondly, defendants IGBINOSA, YATES, DIEP, EARHMAN, and PHI have
a policy that only allows medical transfers to medical facilities if the
inmate only has the following: "MEDICAL CONDITION FOR TRANSFER= HIV, CANCER,
SEVERE COPD/ASTHMA NEEDING OXYGEN TANK." (See exhibit "B" page 2
disposition denied by defendant Dr. PHI, and Associate Warden AHLIN).
Since the initial denial for a medical transfer which was made June 6,
2007 by the plaintiff and made again by his surgeon Dr. KIM on 9/11/07,

11

plaintiff has sustained a hernia which has happened due to him not receiving any form of physical therapy or exercise and left to basically fin for himself.  Surely, these alleged facts are sufficient enough to state a claim under §1983 against defendants IGBINOSA, YATES, PHI, ERHMAN, DIEP, and HICINBOTHOM, since they all were involved in the denial to medically transfer plaintiff to a facility where he could receive adequate medical care.  Thus, a claim under §1983 for violating his constitutional and civil rights has been established.

> **DEFENDANT DR. IGBINOSA; DR. PHI; DR. DIEP; ASSOCIATE WARDEN AHLIN; DR. EHRMAN; ASSOCIATE WARDEN AHLIN; HICINBOTHOM; MARTINEZ; YATES; and UNKNOWN JOHN & JANE DOES**

Plaintiff specifically alleges that when he filed his American with Disabilities Accommodation Request, it was defendants PHI and AHLIN who denied to allow him to medically transfer. (See exhibit "B").  Since PHI was plaintiff's immediate health care physician, he knew of and disregarded the excessive risk to plaintiff's health and safety. Defendant AHLIN, by approving defendant PHI'S denial resulted in him knowing of and disregarding the excessive risk to the plaintiff's health and safety, especially since plaintiff's surgeon had contacted defendant IGBINOSA with a request to have plaintiff medically transferred.   Because defendant PHI, AHLIN, and IGBINOSA all knew of the excessive risk to plaintiff's health if he did not receive adequate medical care, but they disregarded the excessive risk to him, they must be held liable for failing to act in light of the harms and risks plaintiff faced without receiving proper and adequate medical rehab.
Thus. on defendants IGBINOSA. PHI. and AHLIN. plaintiff has alleged facts sufficient enough to support a cognizable claims against these defendants

12

in violation of 42 U.S.C. §1983 and a violation of plaintiff's rights to medical care under the Eighth Amendment.

Defendant Dr. DIEP. Dr. EHRMAN. IGBINOSA. MARTINEZ. HICINBOTHOM. YATES. and UNKNOWN JOHN & JANE DOES 1 through 5 were all made aware of the sufferings of plaintiff and yet they refused to act to relieve plaintiff from suffering in violation of the Eighth Amendment.

Dr. DIEP was plaintiff's original physician who had taken over 15 months to order anMRI on plaintiff's lower back. Once the MRI was given it showed that plaintiff had been suffering with 2 protrouding discs in his back for the past 15 months. Due to defendant DIEP'S failures and refusals to get plaintiff the required medical care that his condition required. defendant DIEP allowed plaintiff to suffer in pain for the entire 15 months or from February 2006 through approximately March 2007. Once the tests showed plaintiff was suffering from the protrouding discs. it took defendants DIEP and PHI another 5 months to get plaintiff the required corrective surgery he needed. allowing him to lay in pain for the entire time.

Defendants IGBINOSA and YATES were the supervisors of defendants PHI. DIEP. MARTINEZ. HICINBOTHOM. and the UNKNOWN JOHN & JANE DOES MEDICAL PERSONNEL, Both defendants IGBINOSA and YATES were made aware of the of plaintiff's sufferings and they both failed to allow him a medical transfer to a medical facility that could assist him in his rehab. Thus. it is well established that supervisors like IGBINOSA and YATES can be held liable when it has been shown that they played an affirmative part in the alleged deprivations of plaintiff's constitutional rights. This has been established by their setting in motion the series of acts by their subordinates in which both IGBINOSA and YATES knew since there is proof

13                      1:07-cv-1577-OWW-SMS-pc

that they were informed by plaintiff's surgeon via the fax sent to IGBINOSA on 9/11/07 that plaintiff would benefit from a medical transfer to a facility that could assist him in his rehab since it was clear he was not receiving any form of adequate medical care from defendants IGBINOSA or YATES. It is clear that with that fax document both defendants IGBINOSA and YATES knew or should have known that the actions of the subordinates was violating plaintiff's constitutional rights by inflicting the constitutional injury. Thus. these facts alleged herein amply show that defendants IGBINOSA and YATES knew of the sufferings of plaintiff because they were notified by the surgeon Dr. Kim and they still failed to act to protect plaintiff's constitutional rights. These alleged facts show that defendants AHLIN also should have known that defendant PHI'S decision to deny a medical transfer would cause the constitutional injury. The same holds true for defendants HICINBOTHOM, MARTINEZ, PRICE. and UNKNOWN MEDICAL PERSONNEL. Once plaintiff made his Correctional Counselor HICINBOTHOM aware of the need to receive a medical transfer. defendant HICINBOTHOM refused to put plaintiff's case before the Classification and Service Representative (CSR) for a medical transfer. Even after plaintiff showed defendants HICINBOTHOM. PRICE. and MARTINEZ the fax received by defendant IGBINOSA from plaintiff's surgeon Dr. Kim in which Dr. Kim requested a medical transfer these specific defendants refused to put plain-tiff's case forward to a committee for a medical transfer claiming that there was no transfers being allowed. period! Thus. plaintiff has amply shown that the conduct of these named defendants caused his continued and constant constitutional violations. Plaintiff has also demonstrated that the named defendants knew of and disregarded the excessive risk to his health and safety. and due to their failures he now suffers from a hernia.

14

Therefore. it should now be abundantly clear that plaintiff has stated a cognizable Eighth Amendment claim against the named defendants.

Plaintiff has also demonstrated in his amended complaint that the conditions complained of have resulted in the deprivation of his constitutional rights secured under the Eighth Amendment. and he has specifically alleged how each named defendant was involved in the violations complained of.  Plaintiff has amply shown that the mistreatments have risen to the level of out right deliberate indifference to his serious medical needs.  The attached exhibits "A". "B" and "C" amply shows that the defendants knew of but disregarded the excessive risks to the plaintiff's health and safety and yet even after being informed of those risks by plaintiff's surgeon. all of the defendants still refused to act to prevent further injury to the plaintiff.  This has now resulted in him suffering a hernia that must be surgically repaired.  This injury would have never been sustained by defendant EHRMAN'S own statement to plaintiff on February 14. 2008 during an examination in which EHRMAN stated the hernia "WAS CAUSED DO TO YOU HAVING TO STRAIN TO GET AROUND IN THAT WHEEL CHAIR."

Thus. based upon the above. it is clear that plaintiff does have a standing to bring this cause of action under 42 U.S.C. §1983 due to the violations of his Eighth Amendment and the many deliberate indifferences he has been made to suffer.

15

GENERAL ALLEGATIONS

1.     This complaint for injunctive relief and damages for defendants deliberate indifference to the serious medical needs of plaintiff during his confinement by the California Department of Corrections and Rehabilitation (CDCR) at Pleasant Valley State Prison (PVSP):

2.     This action arises under 42 U.S.C. §1983. and §1985(3) Civil Rights Violations. and jurisdiction is based upon 28 U.S.C. §§1331 and 1343:

3.     All of the conduct giving rise to the claims alleged herein arose in Fresno County. Tulomne County . Marin County and Solano County. Therefore. venue is proper under 28 U.S.C. §1391(b)(2).

4.     Plaintiff is and was at all relevant times mentioned herein an inmate in the custody, control and care of CDCR employees at various correctional institutions including R.J. Donovan, San Quentin CSP-Solano Sierra Conservation Center and Pleasant Valley State Prison.  Plaintiff has been an inmate at PVSP since January 6, 2006.  At all times during his incarceration plaintiff has relied on the medical care providers at CDCR prisons to provide him with the necessary medical care.

5.     Defendant IGBINOSA is a medical doctor during part of the time relevant herein employed by the CDCR as the Chief Medical Officer (CMO) at PVSP.  Plaintiff is informed and believes and thereon alleges that defendant IGBINOSA is a properly trained and licensed medical doctor who was responsible for the medical care of all inmates at PVSP.  This included but was not limited to the supervision direction and proper training of the medical staff at PVSP in the delivery of proper health care services and the management of health care programs: involvement in the determination of proper medical care for inmates including but not limited to having authority to order and approve medical tests and treatments to be done: having authority to assure that inmates who are transferred to

16                    1:07-cv-1577-OWW-SMS-PC

other institutions receive continuing proper medical care: having authority and responsibility for assuring the proper ordering and stocking of medical supplies: communication of medical needs to the correctional custody staff: and generally making sure that proper medical treatment is provided to all inmates. Plaintiff is further informed and believes and thereon alleges that defendant IGBINOSA was responsible for assuring that PVSP medical staff and all other medical staff/medical providers with whom CDCR contracted in providing medical care to inmates at PVSP provided proper medical care to the inmates and that all such individuals knew and understood and acted pursuant to CDCR policy. At all times mentioned defendant IGBINOSA was acting under color of law in the course and scope of his employment and is sued in his official and individual capacities.

6.     Plaintiff is informed and believes and thereon alleges that at all times mentioned in the complaint defendant YATES was the Warden at PVSP and was responsible for the supervision of subordinate personnel as well as the safety and protection of all inmates at PVSP, including plaintiff:

7.     Defenant PHI is a medical doctor and at all times mentioned in the complaint was employed by theCDCR as a Physician at PVSP. Plaintiff is informed and believes and thereon alleges that defendant Dr. PHI is properly trained and licensed as a medical doctor who is and has been responsible for the medical care of all inmates at PVSP. At all times mentioned in the complaint defendant PHI was acting under color of law in the course and scope of his employment and is sued in his official and individual capacities.

8.     Defendant DIEP is a medical doctor and at all times mentioned in the complaint was employed by the CDCR as a Physician at PVSP. Plaintiff is informed and believes and thereon alleges that defendant Dr. DIEP is properly trained and licensed as a medical doctor who is and has been

17                     1:07-cv-1577-OWW-SMS-PC

resnonsible for the medical care of all inmates at PVSP.   At all times
mentioned in the complaint defendant DIEP was acting under color of law
in the course of his employment and is sued in his official and individual
capacities.

9.     Defendant EHRMAN is a medical doctor and at all times mentioned
in the complaint was employed by the CDCR as a Physician at PVSP.   Plaintiff
is informed and believes and thereon alleges that Defendant EHRMAN is properly
trained and licensed as a medical doctor who is and has been responsible
responsible for the medical care of all inmates at PVSP.   At all timesd
mentioned in the complaint **defend**ant EHRMAN      was acting under color of law
in the course of his employment and is sued in his official and individual
capacities.

10.    Plaintiff is informed and believes and thereon alleges that at all
times mentioned in the complaint defendant AHLIN was an Associate Warden
at PVSP and was responsible for the supervision of subordinate personnel
as well as the safety and protection of all inmates at PVSP including the
plaintiff.   It is further alleged that Defendant AHLIN is the American with
Disabilities Act Coordinator and he is responsible for seeing to the needs
of inmates with disabilities like the plaintiff and making sure that PVSP
is in compliance with Federal law.   At all times mentioned in the complaint
defendant AHLIN was acting under color of law in the course and scope of his
employment and is sued in his official and individual capacities.

11.    Plaintiff is informed and believes and    thereon alleges that at all
times mentioned in the complaint defendant MARTINEZ was an Appeals Coordinator
at PVSP and was responsible for the administration of dealing with inmate
complaints/appeals including the plaintiff's appeals.   It is further alleged
that defendant MARTINEZ violated plaintiff's due process rights secured under

the Fourth and Fourteenth Amendments by failing to allow the process of appeal issues and thus denying plaintiff his right to have his claims justly addressed by the proper prison officials.  At all times mentioned in the complaint defendant MARTINEZ was acting under color of law and is sued in his official and individual capacities.

12.   Plaintiff is informed and believes and thereon alleges that all times mentioned in the vcomplaint defendant PRICE was the Medical Appeals Coordinator at PVSP and he was responsible for the administration of dealing with inmate complaints/appeals on medical issues.  It is further alleged that defendant PRICE violated plaintiff's due process rights secured under the Fourth and Fourteenth Amendments by failing to allow the process of appeal issues and thus denying plaintiff his right to hjavbe have his right to have his claims justly addressed by the proper prison officials.  At all times mentioned in the complaint defendant PRICE was acting under color of law and is sued in his official and individual capacities.

13.   Plaintiff is informed and believes and thereon alleges that at all times mentioned in the complaint defendant D. HICINBOTHOM was the Coreectional Counselor One at PVSP and he was responsible for over seeing inmate case loads such as the plaintiff's and he was responsible for seeing that inmates were properly placed in the correct custody levbls and properly placed in the correct institutions.  It is further alleged that defendant HICINBOTHOM violated plaintiff's constitutional right to be free from cruel and unusual punishment when defendant HICINBOTHOM refused to allow plaintiff to receive a medical transfer  even after plaintiff informed this defendant that he was suffering in extreme pain and HICINBOTHOM had the power to place plaintiff's case up for a medical transfer.  This defendant refused to assist plaintiff leaving plaintiff to unnecessary suffer in violation of the Eighth Amendment.

14.  Plaintiff is informed and believes and thereon alleges that at all
times mentioned in the complaint defendants designated as JOHN & JANE DOES
1-5 inclusive consist of individuals who were or are currently employed
by the CDCR and are responsible for the medical care of all inmates at PVSP
including but not limited to the supervision, direction, and/or proper
training of the medical staff at PVSP in the delivery of health care services
and the management of health care programs: involvement in the determination
of proper medical care for inmates. including but not limited to. having
authority to order and approve medical tests and treatments to be done:
having the authority and responsibility for assuring the proper ordering
and stocking of medical supplies: communication of medical needs to the
correctional custody staff and generally. making sure that proper treatment
is provided to all inmates.  At all times mentioned herein these defendants
were acting under color of law. in the course and scope of their employment.
and are sued in their individual and official capacities. The true names
and capacities of said DOES 1-5 are presently unknown to plaintiff, who
therefore sues them by such fictitious names and will seek leave to amend
his complaint to add their true names and capacities when they have been
ascertained.

15.  From February 2006 throughout to the present date, defendants have
subjected plaintiff to hostility and abuse in apparent retaliation for
plaintiff's complaining to the Federal Receiver Robert Sillen and in retal-
iation for plaintiff's efforts to secure proper medical diagnosis, medications
and/or treatment.  Said conduct of defendants have included but is not
limited to confiscating plaintiff's $350 custom made Don Joy leg brace;
refusing to allow him to receive any physical therapy or knee  surgery
for over 14 months leaving him to suffer in pain;

20

withholding pain medications or not giving them to him at all leaving him to suffer in severe pain directly after his back surgery: discontinuing his pain medications without ever seeing him or conducting any form of diagnosis or evaluation.

CLAIM FOR RELIEF
(Eighth Amendment Violation---Deliberate Indifference to Serious Medical Needs)

16.   Plaintiff is informed and believes. and thereon alleges. that defendants have acted intentionally in the manner described above with knowledge of plaintiff's suffering and the risk of further serious harm that could result from their actions or refusal to act.

17.   Defendants conduct violates 42 U.S.C. §1983, because that conduct constitutes deliberate indifference to plaintiff's serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

18.   As a proximate result of defendants conduct. plaintiff has suffered and continues to suffer general damages in the form of severe pain and suffering and emotional distress.   Plaintiff is informed and believes. and thereon alleges. that he will continue to suffer damages in the future if he remains at PVSP.

19.   As a further proximate result of defendants conduct, plaintiff is informed and believes, and thereon alleges, that he will suffer special damages in the future in the form of medical expenses for treatment and physical therapy for his chronic condition. and loss of income.

20.   In acting as described herein above, defendants acted despicably, knowingly, willfully, and maliciously, or with reckless or callous disregard for plaintiff's federally protected rights entitling him to an award of

21

exemplary and punitive damages as well as immediate preliminary injunctive relief.

PRAYER FOR RELIEF

Wherefore plaintiff prays for judgment against defendants as follows:

1)      For injunctive relief in the form of a medical transfer to a facility closer to his home and adequately equipped to assist in his rehab;

2)      For General Damages, according to proof;

3)      For Special Damages, according to proof;

4)      For Punitive Damages, according to proof;

5)      For cost of the suit; and,

6)      For such other and further relief as the Court may deem proper and just.

Loyd H. Quijem "Pogue

2/21/08

22

# EXHIBIT



# UCDAVIS
## HEALTH SYSTEM

### TELEMEDICINE

September 11, 2007

RE:  POGUE, LEON #·
MR#: 1878871
DOB: 12/09/1957
Date of Service: 09/11/2007
CS-123L

FELIX IGBINOSA, MD
Pleasant Valley State Prison
P.O. Box 8500
Coalinga, CA 93210-1135

Dear Dr. Igbinosa:

I saw Leon Pogue via telemedicine for postop checkup.

On August 3, 2007, he underwent L4 decompressive laminectomy with decompression of bilateral L4-5 foramen. Due to the fact that he had predominantly left sided symptoms, we were aggressive, especially on the left side and placed left ____ foraminal interbody cage, supplemented with pedicle screws. His surgery was complicated by the fact that he had durotomy. He had previous back surgery with extensive scar increasing the risk of durotomy. He reports today that he has pain going from his hip down to his knee. Before the surgery he had low back pain with pain radiating all the way down to the left foot. He does not have that anymore. He also has left knee pathology and in fact, he was recommended to have knee surgery, initially evaluated on June 5, 2007, with recommendation of surgery.

On examination today, he has surgical wound that is very well healed. His right leg strength is normal. His left leg is weaker. I do feel he has objective weakness that also is exacerbated by the fact that he has left knee problem. In order to accelerate his progress, since now he is primarily using a wheelchair to get around, I will recommend that he be transferred to a facility where physical therapy may be administered. I think he would benefit from working with a physical therapist to focus on core strength exercises, back and leg range of motion and strengthening exercises. He does not need further followup with me via telemedicine.

Sincerely,

KEE D KIM, MD
ASSOCIATE PROFESSOR AND CHIEF OF SPINAL NEUROSURGERY
DIVISION OF
DEPARTMENT OF NEUROSURGERY
THIS WAS ELECTRONICALLY SIGNED - 09/14/2007 7:29 PM PST BY:

# EXHIBIT



STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS

**REASONABLE MODIFICATION OR ACCOMMODATION REQUEST**

CDC 1824 (1/95)

| INSTITUTION/PAROLE REGION: | LOG NUMBER: | CATEGORY: |
|---|---|---|
| RJSPC | 07-01947 | 18. ADA |

*NOTE:* **THIS FORM IS TO BE USED ONLY BY INMATES/PAROLEES WITH DISABILITIES**

*In processing this request, it will be verified that the inmate/parolee has a disability which is covered under the Americans With Disabilities Act.*

| INMATE/PAROLEE'S NAME (PRINT) | CDC NUMBER | ASSIGNMENT | HOURS/WATCH | HOUSING |
|---|---|---|---|---|
| POGUE | E65357 | | | C5-123 L |

In accordance with the provisions of the Americans With Disabilities Act (ADA), no qualified individuals with a disability shall, on the basis of disability, be excluded from participation in, or be denied the benefits of the services, activities, or programs of a public entity, or be subjected to discrimination.

You may use this form to request specific reasonable modification or accommodation which, if granted, would enable you to participate in a service, activity or program offered by the Department/institution/facility, for which you are otherwise qualified/eligible to participate.

Submit this completed form to the institution or facility's Appeals Coordinator's Office. A decision will be rendered within 15 working days of receipt at the Appeals Coordinator's Office and the completed form will be returned to you.

If you do not agree with the decision on this form, you may pursue further review. The decision rendered on this form constitutes a decision at the FIRST LEVEL of review.

To proceed to SECOND LEVEL, attach this form to an Inmate/Parolee Appeal Form (CDC 602) and complete section "F" of the appeal form.

Submit the appeal with attachment to the Appeals Coordinator's Office within 15 days of your receipt of the decision rendered on this request form.

If you are not satisfied with the SECOND LEVEL review decision, you may request THIRD LEVEL review as instructed on the CDC 602.

## MODIFICATION OR ACCOMMODATION REQUESTED

DESCRIPTION OF DISABILITY:
HERNIATED DISCS : MCL tEAR (L)KNEE

WHAT VERIFICATION DO YOU HAVE OF YOUR DISABILITY?
DR. K.M V.C.DAVIS telemedicine interview on 6/5/07
M.R.I'S : R.N. GHAVEZ C.T.C. NURSE

DESCRIBE THE PROBLEM:
I will Be Having MAJOR BACK SURGERY to Remove 2 DISCS AND Fuse my SPINE. The MANY HOURS to TRANSPORT to U.C. DAVIS AND BACK will not Be GOOD ESPECIALLY AFTER SURGERY. LACK of ADEQUATE PHYSICAL THERAPY AT PVSP FOR A SUCCESSFUL REHAB AFTER SURGERY.

WHAT SPECIFIC MODIFICATION OR ACCOMMODATION IS REQUESTED?
A MEDICAL TRANSFER to A MEDICAL PRISON CLOSER to U.C. DAVIS So I WON'T HAVE to GO THROUGH SUCH A LONG DRIVE BACK AFTER MAJOR SURGERY. TO BE PLACED IN A MEDICAL PRISON SUITED to effectively ASSIST IN my REHAB.

INMATE/PAROLEE'S SIGNATURE

JUN 27 2007

DATE SIGNED   JUNE 6, 2007

REASONABLE MODIFICATION OR ACCOMMODATION REQUEST
CDC 1824 (1/95)

## REVIEWER'S ACTION

TYPE OF ADA ISSUE

DATE ASSIGNED TO REVIEWER: 06/27/07
DATE DUE: 07/18/07

☐ PROGRAM, SERVICE, OR ACTIVITY ACCESS (Not requiring structural modification)

☐ Auxiliary Aid or Device Requested

☒ Other _trans fe to other facility_

☐ PHYSICAL ACCESS (requiring structural modification)

DISCUSSION OF FINDINGS: _I/M is not medically qualify to be transfer._

DATE INMATE/PAROLEE WAS INTERVIEWED: 7/6/07

PERSON WHO CONDUCTED INTERVIEW: O. Tmi, M.D.

DISPOSITION

☐ GRANTED   ☒ DENIED   ☐ PARTIALLY GRANTED

BASIS OF DECISION: _Not medically qualify, (to be able to t Medical condition for Transfer = HIV, Cancer, severe COPD/asthma Needing O2 Tank_

NOTE: If disposition is based upon information provided by other staff or other resources, specify the resource and the information provided. If the request is granted, specify the process by which the modification or accommodation will be provided, with time frames if appropriate.

| DISPOSITION RENDERED BY: (NAME) | TITLE | INSTITUTION/FACILITY |
|---|---|---|
| B. Piri, M.D. | M.D. | PVSP |

## APPROVAL

ASSOCIATE WARDEN'S SIGNATURE

DATE SIGNED: 8-2-07

DATE RETURNED TO INMATE/PAROLEE: AUG 08 2007

# EXHIBIT



# CALIFORNIA DEPARTMENT OF CORRECTIONS

NAME: POGUE                        CDC #: E65357                        BED: C4-141L

### COMMITTEE ACTION SUMMARY

NO CHANGE TO PS. DENY REQUEST TO TRANSFER TO MEDICAL FACILITY. CPP. DCC.

### COMMITTEE'S COMMENTS

Inmate POGUE had his case reviewed in absentia, per his written request before the Fac C UCC this date, for his annual review. His Placement Score (PS) was adjusted based on work and disciplinary history from 3/05 to 11/06. His next annual reclassification is 11/1/07. Disciplinary history reflects no CDC-115's, resulting in three 6 month period(s) of disciplinary-free behavior. Work history reflects unsatisfactory grades due to medical un-assignment, resulting in no 6-month periods of average to above average work performance. His CS remains unchanged at C. Committee notes mandatory minimum is 19, due to life term. Custody was reviewed and remains CLOB. He is currently Unassigned, WG/PG A1A effective 9/27/04. His case was reviewed and it was determined, he is clear for double cell. Committee notes the file has been reviewed by the CCRA for compliance with PC 296. Committee recommends POGUE continue present program. Committee notes POGUE was endorsed to PVSP-III on a Time override with a placement score of 19 on 11/8/05. Committee is denying POGUE's request for transfer to a medical facility at this time due to no request from medical to transfer. His next BPH hearing is scheduled for 2/2019 for his IPCH. THE CDC-127, 812, 840, AND CONFIDENTIAL FILE HAVE BEEN UPDATED. THE MSF SCREENING FORM IS CURRENT. He is identified as CCCMS per 128C dated 2/17/05, and DPP per CDC 1845 dated 11/18/05, indicating DPM placement. He is not eligible for CCRC MSF, CCF, CAMP, SAP, or RESTITUTION CENTER PLACEMENT, Due to life term and time to serve. Inmate POGUE will be advised of Committee's decision and of his rights to appeal via this CDC-128G, per CCR 3084.5.

### INMATE CASE FACTORS

| CUSTODY | CS/LEVEL | WG/PG & EFF. DATE | RELEASE DATE | GPL | RECLASS | ETHNIC | PSYCH - DATE 128C | NEXT BPT & DATE |
|---------|----------|-------------------|--------------|-----|---------|--------|-------------------|-----------------|
| CLOB | 19/11 | A1A - 9/27/2004 | MEPD 3/5/2020 | 12.9 (R) | 11/1/2007 | BLA | CCCMS 2/17/2005 | IPCH  2/2019 |

### COMMITTEE MEMBERS

CHAIRPERSON
C. Cano, FC (A)

MEMBERS
J. Berkey, CCI

RECORDER
G. Rhoades, CCI

Committee Date: 11/8/2006          ANNUAL REVIEW (ABSENTIA)          Committee: C110806GXR1

Typed By: CG  -  Distribution: C-File & inmate          PLEASANT VALLEY STATE PRISON          Classification Chrono CDC 128G (Rev: 8/04)